THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANNE HUMPHREYS, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 10-cv-1302 |
| | : | |
| BUDGET RENT A CAR SYSTEM | : | |
| INC., et al., | : | |
| Defendants. | : | |

# M E M O R A N D U M

**Stengel, J.**                                                                                                       **March 4, 2013**

This case was stayed pending the resolution of a nearly identical case on summary judgment. Following disposition of the first case and a status conference with all parties, Plaintiff, Anne Humphreys, filed a motion to amend her Complaint seeking to add certain claims. For the reasons stated below, I will grant the Plaintiff's motion.

## I.     Background

Humphreys initiated this action on March 25, 2010, by filing a three-count Complaint, alleging violations of the Federal Debt Collection Practices Act ("FDCPA") and the Pennsylvania Fair Credit Uniformity Act ("PFCUA") and seeking declaratory and injunctive relief under the Federal Declaratory Judgment Act. Humphreys has alleged the following pertinent facts and circumstances.

In July 2008, Humphreys rented a car from Budget in Florida and declined loss damage waiver ("LDW") coverage when she entered into the rental agreement. The rental document provided that if the renter declined to purchase LDW and the car is lost or damaged, the renter is liable for either the estimated repair cost or, if Budget decides to

sell the car, "the difference between the car's fair market retail value before it was damaged and the sale proceeds." (Plaintiff's Motion for Leave to Amend the Complaint, Ex. 1 at ¶ 8). The rental document also provided that the renter is responsible to pay for the loss-of-use of the car, without regard to fleet utilization, plus an administrative fee, and towing and storage charges. (Id.) Humphreys signed the rental document. (Id. at ¶¶ 1-2).

While in Florida, Humphreys' rental car sustained damage and Budget elected to replace the car rather than repair it. Humphreys was notified that, because she declined LDW, she owed Budget $11,225.55 for the replacement of the car. The fair market retail value of the car prior to the damage that occurred while it was in Humphreys' possession was $17,434.12, and Budget subtracted the salvage proceeds, $6,775, to arrive at a subtotal of $10,659.12. Budget also charged Humphreys $416.43 for the loss of use of the car for thirty days. Finally, Budget applied the $150.00 fee for appraisal, evaluation, and administrative expenses.

Humphreys' credit card company declined to cover the claim because Humphreys did not provide the company notification that she would seek coverage as a result of the incident until she received Budget's letter with the final damages calculation. On March 2, 2009, Humphreys informed Budget that she would not pay the damages assessed. Therefore, on April 10, 2009, Humphreys was sent a demand for payment of the $11,255.55 owed to Budget.

## II. Procedural History

Plaintiff filed the initial complaint on March 25, 2010. On May 10, 2010, Defendants filed a Motion for a More Definite Statement under Rule 12(e). I ordered, upon the parties' request, that discovery be stayed and the Defendant's Motion be denied without prejudice pending the resolution of a summary judgment motion in <u>Benson v. Budget Rent A Car System, Inc.</u>, No. 08-4512.[1] Upon resolution of the <u>Benson</u> case, I scheduled a telephone conference between Budget and Humphreys to discuss the resolution of the case. At that conference, Humphreys indicated that the <u>Benson</u> decision did not apply to her case because Florida and not Pennsylvania law applied to the claims in her case.

On April 13, 2012, I issued an order directing the parties to discuss the application of the <u>Benson</u> decision to the <u>Humphreys</u> case as well as the choice of law issue raised by the Plaintiff in the telephone conference. Plaintiff filed a motion to amend the complaint along with the response to my April order on April 30, 2012 (Doc. Nos. 24 & 25). Defendant replied. I will address the motion to amend in light of the <u>Benson</u> decision.

---

[1] <u>Benson</u> was a Pennsylvania Fair Credit Uniformity Act case where the Plaintiff alleged that Budget Rent-A-Car overbilled customers in Pennsylvania for damage to rental cars. Plaintiff, Peter Benson, filed a complaint against Budget on September 16, 2008, which he subsequently amended on November 20, 2008. On October 15, 2010, Defendants Budget and JNR Adjustment Company, Inc. filed a motion for summary judgment prior to any class certification. We denied the summary judgment motion only with respect to the measure of liquidated damages using the loss of use formula. We granted summary judgment in favor of the Defendant on the issues with respect to the rental jacket as an incorporated document to the entire rental agreement and the measure of liquidated damages using the retail value of the vehicle.

Both Benson and Humphreys are represented by the same legal counsel. Budget and Humphreys disagree over the purpose for the stay. The defendant believes that the <u>Benson</u> decision applies squarely to Plaintiff's issues in this case and that there can be no amended complaint or alternative resolution. Plaintiff argues that the ruling on the Motion for Summary Judgment did not cover the issues in its case and the agreement was contingent on the fact that Benson's arguments would apply to Humphreys' case.

### III. Discussion

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading at any time by leave of the court, which "shall be freely given when justice so requires." If the movant has at least colorable grounds for relief, justice requires allowing amendments unless the movant is guilty of undue delay or bad faith, if the amendment would unduly prejudice the opposing party or if the amendment would be futile. Foman v. Davis, 371 U.S. 178 (1962); Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990); Air Products and Chem., Inc. v. Eaton Metal Prod. Co., 256 F. Supp.2d 329, 332 (E.D. Pa. 2003).

The non-moving party must "show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).

In her Amended Complaint Plaintiff has added causes of action for breach of contract and unconscionability based upon the facts alleged in the original Complaint. She has expanded the proposed classes to include class members who live anywhere in the United States (not just Pennsylvania), and to include class members who rented cars anywhere in the United States (not just Florida). Plaintiff argues that she has revised her allegations and claims in recognition of the Court's ruling on summary judgment in the Benson case, and she was precluded from amending her Complaint until the stay was lifted.[2]

---

[2] The proposed amended allegations include:

She contends that no answer to the Complaint has been filed, no depositions have been taken, and no expert discovery has taken place. She claims that the addition of the breach of contract and unconscionability claims involve much of the same evidence necessary to prove the claims stated in the original complaint. Further, Plaintiff states that the additional amendments that expand the class and clarify the issues from Benson are untainted by prejudice.

Defendant argues that Plaintiff has shown no good cause for the delay and seeking to amend the complaint is designed to manipulate the litigation process and surpass the

---

1) "Budget values its vehicles on its corporate records at . . . book value. Since Budget buys the vehicles at prices lower than retail value the pre-accident value of the vehicle . . . should be based on book value, which is the proper measure of damages under the law." Proposed Amended Complaint at ¶ 32;
2) "Before deciding to sell the vehicle for salvage, Budget calculated the anticipated "loss" with respect to Plaintiff's vehicle by subtracting the anticipated net salvage proceeds of $7,000 from the book value of the vehicle prior to the accident of $16,354.45 to arrive at an anticipated loss of $9,354.45." Id. at ¶ 49;
3) "In calculating the bill sent to Plaintiff, Budget improperly and unreasonably valued the car at $17,434.12, even though the book value was $16,354.45. Budget subtracted the net salvage proceeds ($6,775) from $17,434.12, to arrive at a subtotal of $10,659.12." Id. at ¶ 51;
4) "Budget normally keeps cars in service for eleven or twelve months. At the end of that time, if the vehicles are in good condition, Budget will normally sell the vehicles . . . for approximately book value. Budget is constantly buying new cars, which it uses to replace cars sold at the end of their normal service . . . Thus, the fact that a particular car has been damaged in an accident does not affect Budget's vehicle acquisition costs, including license and registration fees and wages to individuals who buy new vehicles." Id. at ¶ 33; and
5) "Budget's imposition of Appraisal/Evaluation/Administrative Fees and its subtraction from salvage value of the Insurance Auto Auction fees are unreasonable and improper where Budget has already recouped such fees by using the pre-accident retail value of the car." Id. at ¶ 40.

The proposed Amended Complaint alleges new causes of action:

1) **Breach of Contract/Covenant:** Defendant Budget breached its contract by failing to notify the subclass members of Budget's demand for damages in a reasonably timely manner, and by calculating "loss of use" damages from the date the vehicle was sold instead of the date the vehicle was replaced. Id. at ¶¶ 77-91.
2) **Breach of the Covenant of Good Faith and Fair Dealing:** Id. at ¶¶ 77-91.
3) **Unconscionability:** Id. at ¶¶ 77-91 as well as for requiring Plaintiff and the other class members to pay the car's pre-accident "fair market retail value" instead of the book value. Id. at ¶¶ 92-96.
4) **Class Action:** Unlike the original complaint, the proposed Amended Complaint does not limit the classes to Pennsylvania residents who rented cars in Florida, but instead includes nationwide classes of all those who rented vehicles from Budget, declined Loss Damage Waiver coverage, and suffered damage. Id. at ¶¶ 14, 16-17. With respect to a PCEUA claim, the proposed Amended Complaint alleges a class of Pennsylvanians who rented from Budget, declined Loss Damage Waiver coverage, and suffered damages. Id. at ¶ 15.
5) **PCEUA:** The proposed Amended Complaint alleges a class of Pennsylvanians who rented from Budget, declined Loss Damage Waiver coverage, and suffered damages. Id. at ¶ 15.

5

parties' agreement to be subject to the outcome of the Benson case. Finally, the Defendants contend that amendment of the Complaint to include claims regarding the reasonableness of Defendant Budget's contract provision, which uses the "fair market value" of the vehicle for the measure of damages, is futile.

A. Application of Benson

Plaintiff argues that the Court's decision in Benson is not controlling in this case because of materially different factual allegations. Plaintiff argues that *stare decisis* does not apply because a "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 131 S. Ct. 2020, 2033 (2011). Additionally, Plaintiff argues that because she is a different party, collateral estoppel and *res judicata* are not applicable. Finally, even if it Benson was controlling, Plaintiff argues that she seeks to assert claims that are either consistent with the Order or different from the claims considered in Benson.[3]

---

[3] Plaintiff claims that she is not re-litigating any of the claims decided in Benson; however, she and the Defendants disagree about the issue of the reasonableness and enforceability of the damages formula utilizing the fair market retail value of the vehicle prior to the damage as the basis for the damages calculation. Plaintiff claims that she *"may"* argue that that the proper measure of damages is book value. Plaintiff then drops a footnote stating "To the extent Budget argues that this Court held in Benson that the proper measure of damages is the cost of a new more expensive vehicle, Humphreys respectfully believes that such a conclusion was an error of law."

Further, Plaintiff goes on to make her case (not for book value) for fair market value.

> Humphreys also includes allegations that Budget always buys new cars to replace used cars, whether due to an accident or due to the passage of time, and that any incremental costs that Budget incurs because a car goes out of service due to an accident, rather than the passage of time, are minimal and fully covered --- or more than fully covered -- by other charges, such as the Appraisal/Evaluation/Administration fees and the deduction of charges from the salvage proceeds. These additional allegations may cause the Court to rule (after additional discovery) that here - unlike in Benson - Plaintiff has established that the retail fair market value calculation is an unreasonable basis upon which to charge her and other similarly situated individuals.

Defendants argue that the decision in Benson is controlling in the instant action, because the Plaintiffs in each action are and remain represented by the same counsel, and all parties in both actions agreed to perform the discovery necessary and submit the issue for early adjudication in Benson in order that the decision apply to both cases. The Defendant states the parties proposed this strategy because the issues were and remain identical, and it would save time and costs of litigation to stay this case and litigate the issues in Benson.

      *i.*      *Duplicate Issues in Benson and Humphreys*

Humphreys argues that her claims are either consistent with or were not considered in Benson. Specifically, she asserts claims that she was wrongfully charged for 30 days loss of use. Humphreys also alleges a "double dipping" claim, arguing that Budget should not be able to charge separately for administrative fees and costs since the use of the pre-accident retail value of the car was to cover additional costs, including administrative fees, then as it does now.

Humphreys also brings causes of action for breach of contract and unconscionability in the proposed Amended Complaint, which were not alleged in Benson. Finally, the proposed Amended Complaint includes a class and causes of action specifically related to Defendant Budget's failure to provide timely notice of damage to Plaintiff and class members, which Plaintiff alleges was unconscionable and a breach of the covenant of good faith and fair dealing. Again, these claims were not raised in Benson.

The main disagreement concerning the overlap in argument from the Benson decision is the issue regarding the reasonableness and enforceability of the damages formula utilizing the fair market retail value of the vehicle prior to the damage as a basis for the damages calculation. Defendant argues that the issue was determined by this court on the motion for summary judgment after it was fully briefed and argued by counsel. Defendant further argues that the Plaintiffs were represented by the same counsel and Humphreys was stayed only after counsel jointly approached the Court seeking a stay so that issues presented in both cases could be presented through Benson and control in Humphreys. Plaintiff argues that she was not fully represented in the action because Benson did not fully represent her interests and she makes different arguments concerning the reasonableness and enforceability of the damages.[4]

    *ii.    Law of the Case Collateral Estoppel and Res Judicata*

The doctrine of *stare decisis* "limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." Hamilton v. Leavy, 322 F.3d 776 (3d

---

[4] Specifically, Humphreys argues that Budget valued Benson's car at an amount less than book value (the original cost minus depreciation). As a result, Benson could not allege that the proper measure of damages was book value. Instead, he argued that wholesale value was the proper measure of damages. However, Humphreys' car was valued at $1,000 over book value so she "may argue that the proper measure of damages is book value."

Humphreys argues that she includes:

> allegations that Budget always buys new cars to replace used cars, whether due to an accident or due to the passage of time, and that any incremental costs that Budget incurs because a car goes out of service due to an accident, rather than the passage of time, are minimal and fully covered --- or more than fully covered -- by other charges, such as the Appraisal/Evaluation/Administration fees and the deduction of charges from the salvage proceeds. These additional allegations may cause the Court to rule (after additional discovery) that here - unlike in Benson - Plaintiff has established that the retail fair market value calculation is an unreasonable basis upon which to charge her and other similarly situated individuals.

Plaintiff concludes with the argument that "To the extent Budget argues that this Court held in Benson that the proper measure of damages is the cost of a new more expensive vehicle, Humphreys respectfully believes that such a conclusion was an error of law."

Cir. 2003) (quoting E. Pilots Merger Cmte. v. Cont'l Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002). The purpose of the doctrine is to promote the "judicial system's interest in finality and in efficient administration." Todd & Co., Inc. v. S.E.C., 671 F.2d 154, 156 (3d Cir. 1980). While the "doctrine does not restrict a court's power but rather governs its exercise of discretion," In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir. 2009), it should be applied to avoid unnecessary reconsideration of matters already decided in order to promote finality, consistency, and judicial economy.

Collateral estoppel, or issue preclusion, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."[5] Allen v. McCurry, 449 U.S. 90, 94 (1980); Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2000). However, this is only applicable "provided that the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior action." The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action.

---

[5] Under Pennsylvania law, the elements of collateral estoppel are:

> (1) the issue decided in the prior adjudication was identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in a prior action.

Walker v. Horn, 385 F.3d 321, 337 (3d Cir. 2004)

9

The doctrine of res judicata applies to claims where a "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir. 1999).

The main concern in this case is whether Humphreys was fully represented under the law in the litigation of the identical issues decided in Benson. In other words, was Humphreys in privity with Benson. Privity "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." EEOC v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990) (quoting Bruszewski v. United States, 181 F.2d 419, 423 (3d Cir.)). A relationship is usually considered to be sufficiently close "only when … the non-party actually controls the litigation." Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172, 176 (3d Cir. 1994).[6]

Moreover, a pre-existing legal relationship is not only a sufficient condition for privity, it is also a necessary one. Id. at 177. Virtual representation entails more than merely serving the interests of the person outside the suit; it "requires a relationship by which the party in the suit is the legally designated representative of the non-party." Id. at 176-77. Put another way, privity will depend upon what obligation, if any, the representing party had to safeguard the interests of the nonparty. See Moldovan v. Great Atl. & Pac. Tea Co., 790 F.2d 894, 899 (3d Cir. 1986) ("Whether the trustees had such a

---

[6] See Moore, 515 A.2d at 273 (stating that substantial participation in the control of a suit creates privity); United States v. Webber, 396 F.2d 381, 386-87 (3d Cir. 1968) (holding that defendants were in privity with prior litigants because they controlled the prior suit).

10

relationship with the prior litigation that its outcome can be held binding upon them depends upon what obligation [a union] had to safeguard their interests.").

Some courts have held that the legal relationship for privity can be "an express or implied legal relationship." See Pony Express Records, Inc. v. Springsteen, 163 F. Supp. 2d 465, 474 (D.N.J. 2001). In Hitchens v. County of Montgomery, 98 Fed. Appx. 106, 113 (3d Cir. 2004), the court found that although union members are generally in privity with the union and a decision against a union can bind union members in a subsequent action, See, e. g., Handley v. Phillips, 715 F. Supp. 657, 666-67 (M.D. Pa. 1989), Plaintiff was not a member of the union. Hitchens, 98 Fed. Appx. at 113. Therefore, the court found that "what determine[d] whether the union was [plaintiff's] legally designated representative [was] whether [plaintiff] invested the union 'with the authority to represent him in an action.'" Id. (citing Restatement (Second) of Judgments § 41).

Humphreys is represented by the same counsel as the plaintiff in Benson but argues that she was neither a party to the Benson action nor in privity with the plaintiff. The fact that both Plaintiffs had the same attorney does not make preclusion appropriate. In Benson & Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172, 1174-76 (5th Cir. 1987), the fact that plaintiffs in the second suit were represented by the same attorney as plaintiffs in the first suit and that one of the plaintiffs had testified in the first suit was not enough to establish privity.

Although, Humphreys argues that the issues are factually dissimilar from those adjudicated in Benson and she "may" have a different argument regarding the damages formula, I find that this issue of whether the damages clause is reasonable is identical to

that in Benson. It is also incredibly unclear to me for what other purpose the parties in these two cases would have chosen to stay Humphreys aside from having Benson represent Humphreys interests and eliminating identical issues. My Orders, the stay of the case, and Budget's agreement to this arrangement, make no sense if Humphreys is now permitted to relitigate the issue.[7]

The arguments posed by Plaintiff's counsel concerning choice of law and the reasons for staying her case appear disingenuous against the history and interplay of both cases. The fact that the counsel jointly approached the Court seeking a stay of this case so that issues present in both Benson and Humphreys could be discovered and presented through a summary judgment motion in Benson, which would be controlling for Humphreys directly conflicts with the Plaintiff's arguments.

However, the lack of record evidence that Plaintiff "controlled" the previous case or of the agreement that Benson would represent Humphreys' interest makes it difficult to reconcile the starkly opposing viewpoints of counsel. In this situation, allowing Plaintiff to continue her suit is the equitable result -- every individual is entitled to his or her day in court. See 18 Charles Alan Wright, Arthur R. Miller, and Edward M. Cooper, Federal Practice and Procedure § 4449, at 417 (1981) ("Our deep-rooted historic tradition that everyone should have his own day in court draws from the clear experience with the general fallibility of litigation and with the specific distortions of judgment that arise from the very identity of the parties."). Therefore, I will grant Plaintiff's request to

---

[7] My July 29, 2010, Order stated that the instant action, be stayed "pending resolution of a motion in Benson v. Budget Rent A Car System, Inc., No. 08-4512." In my December 9, 2010 Order I stated Humphreys be stayed "pending the resolution of the summary judgment motion in Benson."

12

amend her Complaint and find that the Benson opinion will not preclude any arguments therein.

B. Choice of Law

Although Plaintiff argued the Benson decision could not preclude Humphreys case because Florida, and not Pennsylvania, law should apply. Both parties agree that Pennsylvania law should be applied.

**IV.    Conclusion**

For the reasons discussed above, I will grant Plaintiff's Motion to Amend the Complaint.

An appropriate Order follows.