### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNE HUMPHREYS, | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO. 10-cv-1302 |
| | : | |
| BUDGET RENT A CAR SYSTEM | : | |
| INC., et al., | : | |
| **Defendants.** | : | |

## M E M O R A N D U M

**STENGEL, C.J.**                                        **December 19, 2017**

This case involves a dispute over alleged damages to a car the plaintiff rented from Budget Rent A Car System, Inc. Defendant Viking Collection Service, Inc., attempted to collect the debt on behalf of Budget after the plaintiff declined to pay for the damages. Three counts remain in plaintiff's second amended complaint. First, plaintiff alleges Viking violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1962e, by sending communications to the plaintiff that misrepresented the amount, character, and legal status of the alleged debt. Second, plaintiff alleges breach of contract and breach of the covenant of good faith and fair dealing against Budget. Lastly, plaintiff alleges that Viking and Budget both violated the Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA"), 73 Pa.C.A. §2270.

The parties recently moved for summary judgment. Plaintiff moved for partial summary judgment against Viking as to the first cause of action alleging a violation of the FDCPA. Viking opposed plaintiff's motion and cross-moved for summary judgment

1

as to both claims. Budget moved for summary judgment as to plaintiff's PFCEUA and breach of contract claims. Plaintiff opposed Budget's motion.

For the reasons discussed below, plaintiff's motion for summary judgment against Viking is denied, and Viking's cross-motion for summary judgment is granted in full. Budget's motion for summary judgment is granted in part and denied in part. First, Budget's motion for summary judgment as to count three alleging breach of the duty of good faith and fair dealing relating to timeliness of the notice is granted. I find there is a question of fact whether Budget breached the duty of good faith and fair dealing in its use of the sale date, rather than the replacement date, in the loss of use formula. With respect to count four seeking declaratory judgment, I find that the use of fair market value rather than book value is reasonable as a matter of law and does not constitute a penalty. However, because there is a question of fact whether the loss of use formula is reasonable, Budget's motion to dismiss count four is denied. Finally, Budget's motion for summary judgment on plaintiff's claim alleging a violation of the PFCEUA is granted.

## I.    Background[1]

In July 2008, Plaintiff Anne Humphreys—a resident of Pennsylvania—rented a car from Budget in Florida. As part of this transaction, she signed the standard form rental agreement and declined loss damage waiver (LDW) coverage. The rental agreement provided that if the renter declined to purchase LDW coverage and the car was lost or damaged, the renter is liable for either the estimated repair cost or, if Budget in its

---

[1] The factual allegations in this section are taken from the second amended complaint, unless otherwise noted. <u>See</u> Second Am. Compl., Doc. No. 62.

sole discretion determines to sell the car, "the difference between the car's fair market retail value before it was damaged and the sale proceeds."[2] It also required the renter to pay for Budget's loss-of-use of the car, without regard to fleet utilization, plus an administrative fee, and towing and storage charges.[3]

The events leading up to this controversy began in July of 2008 when the plaintiff's rental car stalled in a rain storm and was towed back to Budget. Budget then provided the plaintiff with a replacement car. On January 27, 2009, Budget sent the plaintiff a letter stating that she owed $11,225.55 for damage to the first car.[4] Because the plaintiff declined LDW coverage, Budget claimed she was responsible for any damage to the car while it was in her possession, regardless of fault.[5]

Plaintiff alleges that because Budget failed to timely notify her of the damage, the plaintiff's credit card and auto insurance companies declined to cover the claim as untimely. On March 2, 2009, the plaintiff sent a letter to Budget stating that her insurer and credit card company were not willing to pay for the damages. She declined to pay the alleged debt stating that "[s]ince the delay of notification by Budget is what precluded timely submission of the claim, it would seem that the fault lies with Budget."[6]

On April 10, 2009, Viking sent the plaintiff a letter[7] at her home in Philadelphia demanding full payment of the $11,225.55 allegedly owed to Budget.[8] To arrive at that

---

[2] See Second Am. Compl., Ex. 1 at 2.
[3] See id.
[4] See id., Ex. 2.
[5] Id.
[6] Budget's Mot. For Summ. Judg., Doc. No. 166, Ex.8.
[7] Id., Ex. 4 at 1.
[8] The rental agreement provision related to collection of a debt reads:

damages sum, Budget subtracted the actual disposal proceeds or salvage value of the plaintiff's rental car ($6,775.00) from what Budget had listed as its actual cash value prior to the accident ($17,434.12).[9] The $6,775.00 salvage value was the amount that Budget received from selling the damaged car at auction ($7,000.00) minus the auctioneer's towing and administrative fees ($225.00).[10]

Budget also charged the plaintiff $150.00 for "appraisal/evaluation/administrative fees" and $416.43 for loss of revenue/use.[11] The $416.43 loss of revenue/use fee was calculated by multiplying the daily rate for the rental vehicle ($19.83) by Budget's fleet utilization estimate (70%) and then by the number of days Budget claimed had passed before the vehicle was sold (30).[12]

A statement outlining the sale of the damaged rental vehicle at auction indicates that the car had "engine damage."[13] The statement lists the date of loss as July 30, 2008.

---

20. Collections. All charges, fees and expenses, including payment for loss of or damage to the car, are due at our demand. If you do not pay all charges when due, you agree to pay a late charge of the lesser of either 1 ½% per month on the past due balance. If that rate is not permitted by law, then you will pay the highest rate permitted by law on the past due balance. You will pay any collection costs, including a service charge, for any check that is not honored by a financial institution and [sic] reasonable attorney's fees. If you don't pay any amount when due, if the law permits, you authorize us to contact you or your employer at your place of business about payment. **If you fail to pay any indebtedness to us in full, you understand that we may report such deficiency to an appropriate credit reporting agency.**

Id., Ex. 1 at 4 (emphasis in original).
[9] See id., Ex. 2 at. 10.
[10] See id. at 9.
[11] The rental agreement also permitted Budget to charge the plaintiff for towing or storage fees. However, none were listed in calculating her damages. See id., Ex. 2 at 10. It appears that these charges may have been included in the administrative and towing charges which the auctioneer deducted from the car sales proceeds. See id. at 9. (specifically "Elapsed Days Analysis" and "IAA Charges" sections).
[12] See id., Ex. 2 at. 10.
[13] See id. at 9.

Id. The car was then sold on August 13, 2008.[14] The statement indicates that the "elapsed total days" related to the loss was fifteen.[15]

According to Budget's records, the car rented by the plaintiff was purchased by Budget in January 2008 for $18,314.00.[16] Budget listed its book value at the time of the accident as $16,354.45, the purchase price minus the accumulated depreciation of $1,959.55 (accounting for the decline in value over six months of use).[17]

Subsequently, the plaintiff brought this suit against Budget and Viking seeking damages, restitution, declaratory relief, an injunction, expenses, and attorney's fees. The complaint alleges a violation of the FDCPA by Viking, a breach of contract/breach of the covenant of good faith and fair dealing by Budget, and a violation of the PFCEUA by both Budget and Viking. The complaint also asserts a count of unconscionability[18] against Budget (Count IV) and a count for declaratory judgment and injunctive relief (Count V) to prevent the defendants from collecting the charges that the plaintiff asserts she does not owe.

## II.    Procedural History

The plaintiff filed an initial complaint on March 25, 2010. (Doc. No. 1.) On May 10, 2010, the defendants filed a Motion for a More Definite Statement under Rule 12(e). (Doc. No. 9.) Subsequently, discovery in this case was stayed and the defendant's motion

---

[14] Id. Budget's internal accounting statement also lists the sale date as being August 13, 2008 with a "process date" of September 5, 2008. The significance of this "process date" is unclear from the record. See id., Ex. 6.

[15] See id. Ex. 2 at 9.

[16] This amount is the "Capital Cost" listed in Budget's records. See id., Ex. 6.

[17] See id.

[18] I dismissed plaintiff's unconscionability claim in my decision dated April 22, 2014.

was denied without prejudice pending the resolution of a summary judgment motion in

Benson v. Budget Rent A Car System, Inc., No. 08-4512, which involved similar

questions of law and fact. The Benson motion was decided on September 29, 2011.[19]

On April 13, 2012, I issued an order directing the parties to brief the application of

the Benson decision[20] to the Humphreys case as well as a choice of law issue.[21] On April

30, 2012, the plaintiff filed a motion to amend the complaint along with her response to

the April order.[22] On March 4, 2013, I granted the plaintiff's motion to amend the

complaint. I found that although both this case and Benson asked the identical question of

whether Budget's damages clause was reasonable, Benson would not preclude any

arguments that the plaintiff may present.[23] Humphreys v. Budget Rent A Car System Inc.,

---

[19] In Benson I granted summary judgment in favor of Budget on the reasonableness of using retail fair market value to calculate the pre-damage value of damaged rental cars, and I denied summary judgment as to Budget's calculation of the loss of use charges. Benson v. Budget Rent A Car System, Inc., No. 08-4512. 2011 WL 4528334 (E.D.Pa. Sep. 29, 2011).

[20] Benson was a Pennsylvania Fair Credit Uniformity Act case where the Plaintiff alleged that Budget Rent A Car overbilled customers in Pennsylvania for damage to rental cars. Plaintiff, Peter Benson, filed a complaint against Budget on September 16, 2008, which he subsequently amended on November 20, 2008. On October 15, 2010, Defendants Budget and JNR Adjustment Company, Inc. filed a motion for summary judgment prior to any class certification. I denied the summary judgment motion only with respect to the measure of liquidated damages using the loss of use formula. I granted summary judgment in favor of the defendants on the issues with respect to whether the rental jacket was an incorporated document to the entire rental agreement and whether using the retail value of the vehicle—as opposed to the wholesale value of the vehicle— was a reasonable measure of Budget's damages. See Benson v. Budget Rent A Car System Inc., No. 08-4512, 2011 WL 4528334 (E.D. Pa. Sept. 29, 2011) (Stengel, J.).

[21] Budget included a lengthy choice of law analysis in their motion for summary judgment. Plaintiff correctly notes that the parties already agreed (Doc. No. 25), and I previously decided, that Pennsylvania law applies to this case. (Doc. No. 60 n.26) ("The plaintiff in this case no longer contends that Florida law may be applicable and, instead, conceded that Pennsylvania law applies. Pennsylvania law is applicable . . . ").

[22] See Doc. Nos. 24 and 25.

[23] This decision was made in order to afford the plaintiff her "day in court," given that there was no record evidence to show that the outcome of the Benson motion for summary judgment would

No. 10-1302, 2013 WL 797439, at *5 (E.D. Pa. March 4, 2013) (Stengel, J.). In response to the plaintiff's amended complaint, the defendants filed a motion to dismiss and to strike certain allegations pursuant to Federal Rules of Civil Procedure 12(b) and 12(f).

On April 22, 2014, I granted the defendants' motion to dismiss count four of the amended complaint alleging unconscionability against Budget. <u>Humphreys</u>, 2014 WL 1608391, at *7. I also dismissed plaintiff's claim against Viking alleging a violation of FDCPA §1692(f)(1). <u>Id.</u> at *9. Finally, I dismissed without prejudice plaintiff's claim against Viking alleging a violation of FDCPA §1692(e). <u>Id.</u> at *10. The remaining claims survived.

On April 13, 2017, plaintiff moved for summary judgment against Viking, arguing that Viking violated FDCPA §1692(e) as a matter of law by sending plaintiff communications that misrepresented the amount, character, and legal status of her alleged debt. (Doc. No. 149.) Viking opposed plaintiff's motion and cross-moved for summary judgment. (Doc. No. 159.) On May 25, 2017, Plaintiff opposed Viking's cross-motion. (Doc. No. 168.) On June 16, 2017, Budget moved for summary judgment. (Doc. No. 164, 166.) Plaintiff opposed Budget's motion on July 14, 2017. (Doc. No. 169.)

## III.    Standard

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence is such that a

---

control the outcome in this case. <u>See</u> <u>Humphreys v. Budget Rent A Car System Inc.</u>, No. 10-1302, 2013 WL 797439, at *5 (E.D. Pa. March 4, 2013) (Stengel, J.).

reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials. FED. R. CIV. P. 56(c)(1)(A). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has exceeded the mere scintilla

of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV.   Discussion

### A.  Plaintiff's Motion for Summary Judgment Against Viking.

Plaintiff argues she is entitled to summary judgment on her claim against Viking alleging a violation of FDCPA §1692(e)(2)(A). (Doc. No. 149 at 5-11.) To prevail on a claim under the FDCPA, a plaintiff must establish: (1) that he or she is a "consumer" under the FDCPA; (2) the defendant collecting the debt is a "debt collector"; (3) the challenged practice involves an attempt to collect a "debt" as the Act defines it; and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. Jensen v. Pressler & Pressler, 791 F.3d 413, 417 (3d Cir. 2015).

It is undisputed that plaintiff is a "consumer" and Viking is a debt collector as defined by the FDCPA. (Doc. No. 149 at 6; Doc. No. 159 at 50.) It is also undisputed that the challenged activity involved an attempt to collect a "debt" under the Act. (Id.) The issue is whether Viking violated the FDCPA in its attempt to collect the debt. Plaintiff submits that Viking's communications were "confusing and confounding" in violation of Section 1692(e). (Doc. No. 149 at 7-10.) For the reasons discussed below, I find as a matter of law that Viking did not violate the FDCPA in its attempt to collect the debt owed to Budget. Plaintiff's motion for summary judgment is denied and Viking's cross-motion for summary judgment is granted in full.

1. Viking's April 10 communication complied with the FDCPA and cannot be construed as confusing or misleading to the least sophisticated consumer.

The FDCPA is a remedial statute intended "to eliminate abusive debt practices by debt collectors." Jensen, 791 F.3d at 418-19. Under the statute, a debt collector must:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt . . . send the consumer a written notice containing –

   (1) the amount of the debt;
   (2) the name of the creditor to whom the debt is owed;
   (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
   (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
   (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §1692(g). The statute prohibits "[t]he false representation of the character, amount or legal status of any debt." Id. at §1692(e). In applying this statute, courts employ an objective standard that asks whether the least sophisticated debtor would be confused or misled by the communication. Jensen, 791 F.3d at 418-19.  The confusing or misleading statement must also be material. Id. at 421.

On April 10, 2009, Viking sent a letter to plaintiff that she claims violated the FDCPA. I disagree. I find that Viking's letter complies with the FDCPA. The letter included the amount of the debt ($11,225.55) and the name of the creditor (Avis Budget Car Rental). (Second Am. Compl., Ex. 4.) The letter also included the mandatory

language regarding procedures to dispute the debt. (Id.) Viking's communication

complied with §1692(g) of the FDCPA and was neither confusing nor misleading to the

least sophisticated debtor.

Plaintiff argues that Viking's communication is confusing because Viking failed to

itemize the debt.[24] (Doc. No. 149 at 9.) At the outset, there is no general duty to itemize

under the FDCPA, and such a requirement cannot be read into an otherwise unambiguous

and precise statute. Had Congress intended to require itemization, it would have included

such a requirement in §1692(g). Viking's inclusion of the amount of the debt was

sufficient to comply with the FDCPA.

What is more, the circumstances of this case do not necessitate itemization.

Plaintiff cites Dougherty v. Wells Fargo Home Loan, Inc., 425 F. Supp. 2d 599, 607-08

(E.D. Pa. 2008) and Fields v. Wilber Law Firm, 383 F.3d 562, 565 (7th Cir. 2005),

arguing that a "debt collector can avoid violation of §1692(e) by itemizing the various

charges that comprise the total amount of the debt." (Doc. No. 149 at 9.) Both Dougherty

and Fields are distinguishable from this case.

In Dougherty, the debt collector added $3,768.50 in attorney's fees and costs to

the total amount owed and labeled it "recoverable corporate advances." Dougherty, 425

F. Supp. 2d at 602. The court held that this labeling was deceptive. Id. at 607-08. In

Fields, the consumer owed $122.06, and the debt collector stated that the balance was

---

[24] Plaintiff attempts to bootstrap Budget's alleged wrong-doing to impute liability to Viking. Defendant correctly points out that the FDCPA does not hold a debt collector liable for allegedly confusing communications from a creditor to a consumer. (Doc. No. 149 at 5.) My analysis of whether Viking violated the FDCPA is therefore limited only to Viking's conduct.

$388.54. <u>Fields</u>, 383 F.3d at 563. This unexplained balance included attorneys' fees, which, the court concluded, "hid the true character of the debt." <u>Id.</u> at 566. Both courts reasoned that itemization could have avoided the defendants' violation of §1692(e). <u>Dougherty</u>, 425 F. Supp. 2d at 608; <u>Fields</u>, 383 F.3d at 566. But neither <u>Dougherty</u> nor <u>Fields</u> created a bright-line rule requiring itemization under §1692. These cases only suggest that itemization was one way to clarify an otherwise confusing communication.

Here, Viking sought only the amount due to Budget pursuant to the rental agreement, with no additional charges. (<u>See</u> Second Am. Compl., Ex. 4.) Viking did not hide "the true character of the debt" or employ deceptive labeling that would warrant itemization to avoid a violation of the FDCPA. Consequently, plaintiff's reliance on <u>Dougherty</u> and <u>Fields</u> is misplaced. Viking's communication complied with §1692(g) and is neither confusing or misleading under §1692(e).

2.  <u>The April 27, 2009 Communication.</u>

Viking sent a second set of documents to plaintiff's counsel on April 27, 2009. Plaintiff argues that this communication "deepened the confusion" because it "contained the highly confusing Vehicle Loss Disclosure Form." (Doc. No. 149 at 8.) The issue is twofold: (a) whether this communication was "in connection with" collection of a debt, and (b) whether it is actionable under the FDCPA.

a.  <u>Viking's April 27, 2009 communication was not "in connection" with collection of a debt.</u>

Debt collection activity is any conduct "taken in connection with the collection of any debt." <u>Simon</u>, 732 F.2d at 265. A communication "in connection with" collection of a

12

debt is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 28 USC § 1692(a)(2). A communication "need not contain an explicit demand for payment to constitute debt collection activity," McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240 (3d Cir. 2014), but the "animating purpose" of the communication must be to induce payment by the debtor." Simon, 732 F.3d at 259. The Third Circuit explained,

> [C]ommunications that include discussions of the status of payment, offers or alternatives to default, and requests for financial information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity.

McLaughlin, 756 F.3d at 245-46.

The Court's analysis in McLaughlin is instructive. There, as here, the issue was whether the defendant's communication constituted "debt collection activity." McLaughlin, 756 F.3d at 245-46. The communication at issue included a statement that the defendant was "a debt collector attempting to collect a debt" and that information obtained by the defendant "may be used for that purpose." Id. at 246. The letter included an "invoice-like presentation" of the debt and instructed the debtor on how to obtain information to satisfy the debt. Id. The court held that this communication constituted "debt collection activity," stating that "[i]t is reasonable to infer than an entity that identifies itself as a debt collector, lays out the amount of the debt, and explains how to obtain current payoff quotes has engaged in a communication related to collecting a debt." Id.

Viking's April 27, 2009 communication does not constitute debt collection activity. Viking sent this communication to plaintiff's counsel, Ann Miller.[25] It consisted of a fax cover sheet with fifteen pages of documents: a repair estimate, the accident report completed by plaintiff in August of 2008, the letter from Geico, Budget's Vehicle Loss Disclosure form, and the rental jacket. The fax cover sheet, sent to the attention of Ms. Miller, reads "Ref: Ann Humphreys." It includes no other text or reference to the debt. Unlike the communication in McLaughlin, Viking did not identify itself as a debt collector, and the communication did not include a discussion of payment or alternatives to default. Although the Vehicle Loss Disclosure Form could be construed as an itemization of the debt, this alone, does not amount to a communication in connection with collection of a debt. I agree with defendant that this communication is nothing more than a ministerial response to Ms. Miller's request that all future correspondence be sent to her, as plaintiff's attorney. Viking's April 27 communication was not "in connection with" the collection of plaintiff's debt. Therefore, this communication is not actionable under the FDCPA.

           b.   Viking's communications are not actionable under the FDCPA.

Assuming, arguendo, that the April 27 communication constituted debt collection activity under the FDCPA, which it does not, I will analyze whether Viking's communications violated the FDCPA. Plaintiff submits that Viking's communications

---

[25] As discussed below in section (A)(2)(b), this claim does not fail because the communication was sent only to plaintiff's counsel, and not to the debtor. Allen ex rel. Martin v. LaSalle, N.A., 629 F.3d 364 (3d Cir. 2011) (communications between a debt collector and a debtor's attorney are actionable under the FDCPA). This claim fails because the "animating purpose" of the communication was not to induce payment by the debtor. Simon, 732 F.3d at 259.

were confusing and misleading because "[t]he April 10 letter demanded payment in full of the $11,255.55 [sic] allegedly owed to Budget but provided no itemization [and] Viking's April 27 communication made the same demand and included the highly confusing Vehicle Loss Disclosure form." (Doc. No. 149 at 8.) [26] As discussed above, Viking was under no duty to itemize the debt. See section (A)(1). Therefore, whether Viking's communications violated the FDCPA turns on whether the April 27 communication, either on its own or read in conjunction with Viking's initial demand letter, was confusing or misleading to the least sophisticated debtor. [27]

A communication between a debt collector and a debtor's attorney is actionable under the FDCPA. Allen, 629 F.3d 364 (recognizing the circuit split on this issue,[28] the Court in Allen reasoned that "[a] communication to a consumer's attorney is undoubtedly an indirect communication to the consumer.") (alteration in original); see also Simon v. FIA Card Services NA, 639 F. App'x 885, 888 (3d Cir. 2016). However, the Third Circuit has not directly addressed whether such communications are analyzed from a "competent attorney" standard rather than the FDCPA's "least sophisticated debtor"

---

[26] Plaintiff elaborated in her reply brief that the misleading communications included not only the Vehicle Loss Disclosure form but also the rental agreement and the damages assessment. I will consider these documents together with Viking's Vehicle Loss Disclosure form to determine whether Viking's communication was confusing or misleading to the least sophisticated debtor.

[27] Plaintiff's argument relies, in part, on Budget's allegedly conflicting and confusing communications. As discussed above, plaintiff cannot bootstrap Budget's alleged wrongdoing to establish a claim against Viking. My analysis will focus only on Viking's communications to plaintiff and plaintiff's counsel.

[28] There is a split in authority regarding whether these communications fall within the purview of the FDCPA. See e.g. Guerro v. RJM Acquisitions LLC, 499 F.3d 926, 934 (9th Cir. 2007) (holding that "communications directed solely to a debtor's attorney are not actionable under the [FDCPA]." (alteration in original)); cf. Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 232-33 (4th Cir. 2007) (rejecting the argument "that FDCPA liability cannot attach to communications made by a debt collection attorney to a debtor's counsel, rather than to a debtor.")

15

standard. See Simon, 639 F. App'x at 889 ("We need not address whether the [District]

Court erred in applying this "competent attorney" standard, however, because we

conclude that the [plaintiff's] FDCPA claims fail even under the less stringent "least

sophisticated debtor" standard . . . ."). Since the Third Circuit declined to rule on this

issue, I will proceed under the least sophisticated debtor standard. See Simon, 639 F.

App'x at 888.

      The least sophisticated debtor standard is an objective one. Id. The standard is less

demanding than that of a "reasonable debtor" but it "prevents liability for bizarre or

idiosyncratic interpretations of collection notices by preserving a quotient of

reasonableness and presuming a basic level of understanding and willingness to read with

care." Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 997 (3d Cir. 2011)

(quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354-55 (3d Cir. 2000)). The false or

misleading statement must also be material. Simon, 639 Fed. Appx. at 888. "A statement

is material 'if it is capable of influencing the decision of the least sophisticated debtor.'"

Id. (quoting Jensen, 791 F.3d at 416-17).

      The rental agreement describes the salvage formula as the difference between "fair

market value" and the "sale proceeds," while the Vehicle Loss Disclosure form calculates

damages based on the "actual cash value." (Second Am. Compl., Ex. 1 at 2.) This

conflicting terminology could be confusing or misleading to the least sophisticated

debtor.

      The Supreme Court of Pennsylvania has "clearly distinguished" between market

value and actual cash value:

16

Generally speaking, actual cash value does not mean market value, as the term is understood. Market value . . . embodies what a purchaser willing to buy feels justified in paying for property which one is willing but not required to sell. Market value includes factors of time, place, circumstance, use, and benefit; depreciation is included, but one figure is the result of these considerations, the price to be paid. Ordinarily actual cash value has no relation to any of these factors; it is value under all times, such as the cost of manufacturing or building or book value. [Market value] includes depreciation, while the actual cash value . . . is to be diminished by depreciation. Actual cash value . . .  means what it would cost to replace a building or a chattel as of the date of the fire.

Penn Nat. Ins. V. HNI Corp., Nos. 5-2096, 6-747, 2007 WL 2907542, at *3 (M.D. Pa.

Oct. 3, 2007) (citing Fedas v. Ins. Co. of State of Pa., 300 Pa. 555, 551 (Pa. 1930)

(internal quotations omitted) (second alteration in original)).

Actual cash value and fair market value are distinct measures of damages that can

only be read as having two different meanings.  See Brown v. Card Serv. Ctr., 464 F.3d

450, 455 (3d Cir. 2006) (a communication is "deceptive where it can reasonably be read

to have two or more different meanings, once of which is inaccurate.'"). The least

sophisticated debtor could find that Viking's April 27 communication was confusing or

misleading.[29]

---

[29] The rental agreement also describes loss of use as "loss of use of the car, without regard to fleet utilization," (Second Am. Compl., Ex. 1 at 2) while the Vehicle Loss Disclosure form includes a charge called "loss of revenue/use" (id., Ex. 2 at 10) which is calculated using a formula that is not in the rental agreement. Unlike the salvage formula that contains two different measures of damages, these nuanced terms cannot be read to have two different meanings, one of which is inaccurate.

Plaintiff also argues that the "customer responsibility" on the damages assessment (id., Ex. 2 at 5) could mislead a debtor regarding what she was being charged for and the amount owed. However the rental contract clearly states in bold type that "[i]f the car is damaged, you will pay our estimated repair cost or . . . the difference between the car's retail fair market value before it was damaged and the sale proceeds." (Second Am. Compl., Ex. 1 at 2.) The damages assessment demonstrates what the repair cost would have been to the customer had Budget elected to repair the vehicle. I find that this is neither confusing nor misleading to even the least sophisticated

To result in liability, the false or misleading communication must also be material. And despite the fact that this terminology is misleading, I find that these statements are not material. The amount of the debt is clearly conveyed and is not falsely represented. See Jensen, 791 F.3d at 422. Viking plainly stated the amount of the debt in the April 10 communication demanding $11,225.55. (See Second Am. Compl., Ex. 4.) This same amount is listed on the one-page Vehicle Loss Disclosure form as "total damage claim amount." (Id., Ex. 2 at 10.) I am hard pressed to think of a scenario where the salvage formula would somehow influence a debtor's understanding of the amount of the debt. [30] At most, this terminology could influence a debtor's understanding of how the debt is calculated, but not the amount owed which is unequivocally stated. The nuanced terminology is, at worst, a hyper-technical misstatement that would not affect the actions of even the least sophisticated debtor. Jensen, 791 F.3d at 422.

I find that the conflicting salvage formulas found in the rental agreement and the Vehicle Loss Disclosure form are misleading under the least sophisticated debtor standard. However, these statements are not material, and therefore, this claim is not actionable under the FDCPA.

---

debtor because it requires only a basic level of understanding and willingness to read with care, particularly when read together with Viking's April 10 communication that clearly demands $11,225.55.

[30] Plaintiff does not set forth any evidence to demonstrate that this false or misleading communication is material. Plaintiff distinguishes the cases relied on by Viking, but fails completely to demonstrate materiality.

**B.  Viking is Entitled to Summary Judgment on Plaintiff's State Law
Claim.**

Plaintiff alleges that Viking's communications would be confusing and misleading
to the least sophisticated debtor in violation of the PFCEUA. (Second Am. Compl. at 14-
15.) Viking argues that it is entitled to summary judgment because plaintiff failed to
demonstrate justifiable reliance and an ascertainable loss, both statutory prerequisites for
relief. (Doc. No. 159 at 18-20.) Plaintiff does not submit any opposition to this point.

The enforcement provision of the PFCEUA states, "[i]f a debt collector or creditor
engages in an unfair or deceptive debt collection act or practice under this act, it shall
constitute a violation of [Pennsylvania's Unfair Trade Practices and Consumer Protection
Law ("UTPCPL")]." 73 P.S. §2270.5(a). The PFCEUA does not provide individuals with
a private right of action, and individuals must use the remedial provision of the UTPCPL,
73 P.S. §201-9.2, to obtain relief.  Hall v. Equifax Information Services, LLC, 204 F.
Supp. 3d 807, 810 (E.D. Pa. 2016). The court in Hall explained:

> To establish a claim under the UTPCPL for deceptive conduct, a plaintiff must
> demonstrate: (1) a deceptive act that is likely to deceive a consumer acting
> reasonably under similar circumstances; (2) justifiable reliance; and (3) that the
> plaintiff's justifiable reliance caused ascertainable loss.

Id. at 810-11 (citing Slapikas v. First American Title Ins. Co., 298 F.R.D. 285, 292 (W.D.
Pa. 2014) (citing Seldon v. Home Loan Serv., 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)).
As discussed more fully below, I find that plaintiff is unable to demonstrate justifiable
reliance or an ascertainable loss. Viking is entitled to summary judgment as to plaintiff's
PFCEUA claim.

"[E]vidence of reliance must go beyond simply a causal connection between the misrepresentation and the harm and a plaintiff must show that he justifiably . . . engaged in some other detrimental activity[] because of the misrepresentation." Slemmer v. McGlaughlin Sray Foam Insulation, Inc., 955 F. Supp. 2d 452, 461 (E.D. Pa. 2013) (citing Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222 n.4 (3d Cir. 2008) (internal quotations omitted)). Plaintiff testified that in response to Viking's April 10 communication she found an attorney "right away." (Hump. Dep. at 58:5-59:2.) Retaining an attorney, without more, is insufficient to establish justifiable reliance. Cf. Hall, 204 F. Supp. 3d at 813 (finding justifiable reliance where the plaintiff paid his debt in reliance on the debt collector's "written representation that his payment would satisfy his debt and bring his account balance to zero.").

Likewise plaintiff is unable to demonstrate that she suffered an ascertainable loss as a result of her reliance on Viking's communication. "A plaintiff must be able to point to money or property that he would have had but for the defendant's fraudulent actions." Benner v. Bank of America, N.A., 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013) (noting that the plaintiff's "fee is an outstanding liability, but does not constitute a loss of money or property."). It is undisputed that plaintiff has not paid any portion of the debt and is unable to point to any money or property she would have had but for Viking's actions. Instead, plaintiff alleges that upon receipt of Viking's letter she had difficulty sleeping for a few nights. (Hump. Dep. at 51:15-23.) This is the full extent of plaintiff's alleged loss. Even if this loss were attributable to Viking's conduct, which I am not convinced it is,

this type of injury is not cognizable under the UTPCPL.[31] I find that plaintiff's PFCEAU

claim, brought under the UTPCPL, fails because she is unable to demonstrate justifiable

reliance or an "ascertainable loss of money or property."  Benner, 917 F. Supp. 2d at 360.

Viking is entitled to summary judgment as to plaintiff's PFCEAU claim.

### C.  Budget's Motion for Summary Judgment.

Plaintiff alleges three causes of action against Budget: (1) breach of the covenant

of good faith and fair dealing; (2) declaratory judgment that Budget's method of

calculating damages to rental cars is unlawful and an injunction against collection on

debts calculated using the improper method; and (3) violation of PFCEUA for sending

communications that misrepresented the debt including the value of the car and the loss

of use charges. (See Second Am. Compl.) Budget moves for summary judgment on all

three claims. (Doc. No. 164.)

1.  Breach of the duty of good faith and fair dealing.

Plaintiff alleges Budget violated the covenant of good faith and fair dealing a) in

failing to provide notice of plaintiff's damages until six months after she rented her car

and b) because Budget's loss of use calculation was an unreasonable calculation of

damages. (See Second Am. Compl. at 15-16.) Budget argues that it is entitled to

summary judgment because plaintiff failed to demonstrate she was injured by any alleged

act or omission of Budget. (Doc. No. 164 at 19-22.)

---

[31] To the extent plaintiff alleges an ascertainable loss based on attorney's fees, this too is without merit. Hall, 204 F. Supp. 3d at 812 (citing Grimes v. Enterprise Leasing Co. of Phila., LLC, 629 Pa. 457, 105 A.3d 1188, 1193 (Pa. 2014) ("[Plaintiff] cannot demonstrate ascertainable loss on the basis of legal fees.")).

Under Pennsylvania law, every contract implies a duty of good faith and fair dealing in its performance and its enforcement. <u>John B. Conomos, Inc. v. Sun Company, Inc.</u>, 831 A.2d 686, 706 (Pa. Super. Ct. 2003). The purpose of these implied covenants "is to prohibit a party from 'taking advantage of gaps in a contract in order to exploit the vulnerabilities that arise when contractual performance is sequential rather than simultaneous.'" <u>Curley v. Allstate Ins. Co.</u>, 289 F. Supp. 2d 614, 617 (E.D. Pa. 2003) (quoting <u>Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.</u>, 970 F.2d 273, 280 (7th Cir. 1992) (Posner, J.)). The covenants are not intended to override the express terms of the parties' bargain. <u>Id.</u> In the absence of an express provision, the doctrine of necessary implication may act to imply a missing term or requirement necessitated by reason and justice to effectuate the intent of the parties. <u>Id.</u> Implied duties are solely gap fillers and may not be inserted to trump the express provision in the contract. <u>Id</u>.

Courts use good faith requirements to effectuate the parties' agreement, not to override agreed-upon expectations and duties. <u>See</u> <u>Duquesne Light Co. v. Westinghouse Electric Corp</u>., 66 F.3d 604, 617 (3d Cir. 1995); <u>LSI Title Agency, Inc. v. Evaluation Services, Inc.</u>, 951 A.2d 384, 391–92 (Pa. Super. Ct. 2008) (finding that "the claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim"). Good faith generally entails "faithfulness to an agreed common purpose

and consistency with the justified expectations of the other party." Restatement of

Contracts § 205 cmt. a.[32]

Both the time frame Budget has to give notice of damage and how the loss of use

is calculated are not expressly stated in the contract. (See Second Am. Compl., Ex. 1.)

However, both issues relate to provisions in the contract to which the parties have agreed.

Id. Therefore, these areas are governed by the covenant of good faith and fair dealing as

gap fillers and do not override the express provisions.

To establish a claim for breach of contract based on the implied covenant of good

faith and fair dealing, a plaintiff must show: (1) the existence of a contract and the

content of its essential terms; (2) that the defendant breached the implied covenant of

good faith and fair dealing by breaching a specific contractual duty other than the implied

covenant; and (3) resultant damages. See CRS Auto Parts, Inc. v. Natl. Grange Mut. Ins.

Co., 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009). Budget argues in its motion for summary

---

[32] Restatement of Contracts § 205 discusses the duty of good faith and fair dealing stating:

> c. Good faith performance. Subterfuges and evasions violate the obligation of good faith
> in performance even though the actor believes his conduct to be justified. But the
> obligation goes further: bad faith may be overt or may consist of inaction, and fair
> dealing may require more than honesty. A complete catalogue of types of bad faith is
> impossible, but the following types are among those which have been recognized in
> judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off,
> willful rendering of imperfect performance, abuse of a power to specify terms, and
> interference with or failure to cooperate in the other party's performance.

The Pennsylvania Supreme Court has not explicitly adopted § 205, but several federal diversity
courts in Pennsylvania have predicted that the court would do so if presented with such a
question. See Kamco Indus. Sales Inc., 779 F. Supp. 2d 416, 425 (E.D. Pa. 2011); Zaloga v.
Provident Life & Accident Ins. Co. of America, 671 F. Supp. 2d 623, 629–30 (M.D. Pa. 2009);
Western Sur. Co. v. WGG, Inc., No. 07-1551, 2009 WL 222429, *3 (M.D. Pa. 2009); Fitzpatrick
v. State Farm Ins. Co., No. 09-1498, 2010 WL 2103954, *3 (W.D. Pa. 2010); but see Leder v.
Shinfeld, 609 F. Supp. 2d 386, 400 (E.D. Pa. 2009).

judgment that plaintiff is unable to demonstrate damages as a result of Budget's alleged breach.

    a.   <u>Budget's untimely notice of plaintiff's damages.</u>

Plaintiff alleges that because Budget failed to timely notify her of the damage to the rental vehicle, she was denied coverage by her automobile insurer. The issue is whether plaintiff sustained an injury as a result of Budget's untimely notice. Plaintiff argues that the fact that Budget sent her a bill for the damages is sufficient to demonstrate injury. (Doc. No. 149 at 9.)

As noted in my April 22 memorandum, "'[t]he fact that plaintiff is being charged with a debt she would not have to pay *but for Budget's lack of notice* is enough to show damages." <u>See</u> <u>Humphreys</u>, 2014 WL 1608391, at *8 n.42 (emphasis supplied).[33] Here, the undisputed facts establish that plaintiff's claim was submitted to her automobile insurer and was rejected because plaintiff's policy did not provide coverage for the loss. The timeliness of Budget's notice had no bearing on the insurer's denial. Plaintiff is unable to demonstrate that she was charged with a debt she would not have to pay but for Budget's alleged lack of notice. Therefore, plaintiff is unable to demonstrate she suffered an injury as necessary to establish a breach of the covenant of good faith and fair dealing.[34]

---

[33] Plaintiff quotes this reasoning in her opposition, but conveniently omits the "but for" analysis. I did not hold then, and do not hold now, that the mere fact that Budget sent plaintiff a bill is sufficient to demonstrate damages. There must be a causal connection between Budget's alleged conduct and plaintiff's injury.

[34] Plaintiff argues that damages for emotional distress are cognizable in breach of contract actions where "the breach is of such a type that serious emotional disturbance is a particularly likely result." (Doc. No. 149, at 9) (citing <u>Rittenhouse Regency Affiliates v. Passen</u>, 333 Pa.

Plaintiff also alleges that as a result of Budget's untimely notice she was denied coverage through her credit card issuer. Plaintiff failed to set forth any evidence to support this contention. Plaintiff did not produce any documentation that such coverage existed. Likewise, the record is devoid of any evidence that the issuer rejected the claim, let alone rejected it as untimely. Also troubling is the fact that Budget's records show that plaintiff used a Visa card to rent the vehicle, but plaintiff submitted "sample" credit card issuer agreements from American Express in her class certification papers. (See Doc. No. 95.) Plaintiff failed to set forth any evidence demonstrating that coverage was denied as a result of Budget's untimely notice of the claim, or even that such coverage existed. Given all of this, plaintiff is unable to demonstrate that she was charged with a debt she would not have to pay but for Budget's untimely notice.

I find that plaintiff is unable to demonstrate injury as a result of Budget's alleged untimely notice. Budget is entitled to summary judgment on plaintiff's claim alleging a breach of the duty of good faith and fair dealing relating to improper notice.

    b.   <u>Budget's loss of use calculation.</u>

Plaintiff alleges that Budget breached the duty of good faith and fair dealing because the loss of use formula improperly calculates damages. (Second Am. Compl. at 15-16.)  Specifically, plaintiff argues Budget's use of the sale date as the cutoff for loss of use charges, capped at 30 days, is unreasonable because the replacement date is the

---

Super. Ct. 613, 615 (1984) and <u>Parker v. Lemburg Law</u>, No. 615 cv. 1466ORL37TBS, 2015 WL 13357935 (M.D. Fla. Oct. 22, 2015)). I do not find that a serious emotional disturbance is "particularly likely to result" from breach of a rental car contract. Even if the nature of the contract were such that emotional distress were foreseeable, plaintiff's alleged difficulty sleeping, without more, does not constitute a serious emotional disturbance.

proper measure of damages. (Id.) Defendant argues it is entitled to summary judgment because plaintiff failed to demonstrate that Budget's loss of use formula was an unreasonable measure of damages. (Doc. No. 164 at 22-26.) There is a genuine question of fact whether the use of the sale date, as opposed to the replacement date, is an unreasonable measure of damages.

In general in Pennsylvania, a property owner is entitled to recover for loss of its property when damaged, regardless of actual harm. Kitner v. Claverack Rural Elec. Co-op., Inc., 478 A.2d 858, 861 (Pa. Super. Ct. 1984); Dennis v. Ford Motor Co., 471 F.2d 733, 736 (3d Cir. 1973); see also Restatement (Second) of Torts §§ 928, 931(a) (a property owner "is entitled to recover as damages for the loss of the value of use, at least the rental value of the chattel or land during the period of deprivation. This is true even though the owner in fact has suffered no harm through the deprivation, as when he was not using the subject matter at the time or had a substitute that he used without additional expense to him.").[35] A person "claiming loss of use damages when the property is not repairable must show that the method of acquiring a replacement for the property and the time taken for the replacement were reasonable." Kitner, 478 A.2d at 862 (quoting Reynolds v. Bank of Am. Nat'l Trust and Savings Ass'n, 345 P.2d 926 (Cal. 1959)).

The rental agreement states, "you'll pay for loss of use of the car, without regard to fleet utilization . . . ." (Second Am. Compl., Ex. 1 at 2.) Budget determines the loss of salvaged vehicles by calculating the number of days between the date of loss and the date

---

[35] Plaintiff's argument that Budget's loss of use formula is not contractually authorized because Budget did not sustain actual damages is without merit. (Doc. No. 170 at 4). Budget, as a property owner, is entitled to recover for loss of use of its property, regardless of actual damages.

of sale of the damaged vehicle. This number is capped at thirty days. The number of days is multiplied by rental costs, which is then multiplied by Budget's utilization rate of seventy percent.

Budget does not replace individual vehicles. (Doc. No. 164 at 25.) Rather, Budget makes fleet purchasing decisions based on overall utilization and cost considerations. (Id.) Because Budget replaces vehicles based on the expected needs of particular locations, it "has no means of tracking such 'replacement' on an individual basis." (Id.) Instead, Budget calculates loss of use based on the date the damaged vehicle is sold.

A jury could find that Budget's loss of use formula based on the sale date is an unreasonable measure of damages. Under Budget's loss of use calculation, it is possible that a customer could be charged for the time period after the rental location replaces the car, but before the damaged vehicle is sold. The replacement date is an objectively more accurate measure of loss of use. The fact that Budget does not replace vehicles on an individualized basis does not mean that it is impracticable to calculate loss of use based on the replacement date. A jury could find it unreasonable for Budget to calculate loss of use based on the sale date of the salvaged vehicle. There is a question of fact whether Budget breached its duty of good faith and fair dealing in its use of the sale date to calculate loss of use.[36]

---

[36] Even if I were to find that the sale date was not unreasonable as a matter of law, Budget admits that it overcharged plaintiff when it calculated the loss of use (charging plaintiff for 30 days when the car was sold only 28 days after the damage occurred). (Doc. No. 108 at P. 15.) The fact that Budget overcharged plaintiff when it applied its loss of use formula is sufficient to overcome a motion for summary judgment.

2.  <u>The salvage formula is not an unenforceable penalty.</u>

Plaintiff seeks declaratory judgment that Budget's method of calculating damages "is inconsistent with and a violation of law." (Second Am. Compl. at 17-18.) Plaintiff submits that use of "retail fair market value" to calculate liquidated damages is unreasonable, and that "book value" is the appropriate measure of damages. (Doc. No. 170 at 10-12.) Budget argues it is entitled to summary judgment because the salvage formula is reasonable and enforceable, and is not a penalty provision. (Doc. No. 166 at 26-27.)

Initially, fair market value is the appropriate measure of damages for destruction to property. <u>Carl Bales Excavating Inc. v. Strawberry Hill Associates LP</u>, No. 07-3991, 2010 WL 5312167, at *36 (Ct. Com. Pl. Aug. 4, 2010) (citing <u>Rabe v. Shoenberger</u>, 213 Pa. 252, 256 (Pa. 1906) ("Thus, we restate herein the longestablished [sic] rule that, when the damage to property is permanent, the measure of damages is the reduction in fair market value of the land.")). Plaintiff's unsupported assertion that book value is the appropriate measure of damages contravenes the long-established rule that fair market value is the appropriate measure of damage to property. This alone is sufficient to defeat plaintiff's allegation that Budget's use of fair market value is unreasonable.

Additionally, the overwhelming evidence demonstrates that "book value" is an accounting fiction. (March 2016 Cert. Hearing, Adams testimony, P. 121, 124, 128-130, 139.) Plaintiff fails to demonstrate why this accounting fiction is a more appropriate measure of damages than fair market value, the generally accepted damages measure.

Plaintiff's argument that the use of fair market value rather than book value would permit Budget to get a windfall is equally unavailing. On the date of the sale, the book value of plaintiff's damaged car was $16,354.45 (Second Am. Compl., Ex. 6) and the pre-damage fair market value was $17,434.12 (id., Ex. 2 at 10), a difference of only six percent. The use of fair market value is not so "grossly disproportionate" as to constitute a penalty provision. See Brinich v. Jencka, 757 A.2d 388, 401-02 (Pa. Super. Ct. 2000) (holding that liquidated damages over eight times the cost of actual damages was an unenforceable penalty).

The use of fair market value to calculate damages under the circumstances presented here is reasonable as a matter of law and does not constitute a penalty. However, because there is a question of fact whether Budget's calculation of the loss of use based on the sale date of the vehicle is unreasonable (see Section (C)(1)(b)), there remains a question of fact whether the calculation of damages is unreasonable.

3.   Budget is entitled to summary judgment on plaintiff's PFCEAU claim.

Plaintiff alleges Budget violated the PFCEAU because it "false[ly] represent[ed] the character, amount and/or legal status of Plaintiff's . . . alleged debts." (Second Am. Compl. at 14-15). For the same reasons that I dismissed plaintiff's PFCEAU claim against Viking, (see Section B), plaintiff's claim against Budget also fails.

As discussed above, plaintiff can neither establish justifiable reliance nor an ascertainable injury as a result of Budget's conduct as required under the remedial provisions of the UTPCPL. Hall, 204 F. Supp. 3d at 810. Plaintiff failed to demonstrate

that she engaged in detrimental activity because of Budget's alleged misrepresentation. <u>Slemmer</u>, 955 F. Supp. 2d at 461. Therefore, she is unable to establish justifiable reliance.

Plaintiff also fails to demonstrate an ascertainable injury.  Plaintiff alleges only loss of sleep and "lost time calling Defendant and filling out forms regarding the charges." (Doc. No. 170 at 12-13.) This simply does not rise to the level of emotional distress that is cognizable under the UTPCPL. <u>Rittenhouse Regency Affiliates</u>, 333 Pa. Super. at 4832 ("Damages for emotional distress are not normally available unless the plaintiff alleges . . . physical injury or impact."); <u>Walkup v. Santander Bank, N.A.</u>, 147 F. Supp. 3d 349, 364 (E.D. Pa. 2015) ("Plaintiff's alleged emotional distress, shame, and embarrassment are not cognizable as damages in a breach of contract case without physical injury.").

There is no genuine dispute as to any material fact concerning plaintiff's claim that Budget violated the PFCEAU, and summary judgment is granted.

An appropriate Order follows.